Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ROBERTO PALOU BOSCH Y AMARILYS DE JESÚS GONZÁLEZ Y LA SLBG<br>**Peticionario**<br><br>V.<br><br>SUCESIÓN JORGE MORALES CRUZ COMPUESTA POR JORGE MORALES NAVARRO, ROBERTO MORALES NAVARRO, SUCESIÓN HAYDEE MORALES NAVARRO, LIMARIE O´FARRIL MORALES, DAGMARIE O´FARRIL MORALES, JAVIER O´FARRIL MORALES Y JULIA NAVARRO<br>**Recurrida** | TA2026CE00686 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm.<br>D AC2017-0363<br><br>Sobre:<br>Disolución de Comunidad de Bienes y Otros |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de junio de 2026.

El 28 de mayo de 2026, el Sr. Roberto Palou Bosch (señor Paolu Bosch), la Sra. Amarilys De Jesús González (señora De Jesús González) y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto los peticionarios), comparecieron ante nos mediante *Certiorari y* solicitaron la revisión de una *Orden* que se emitió el 27 de abril de 2026 y se notificó el 28 de abril de 2026 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Mediante esta, el TPI declaró No Ha Lugar, en este momento, la *Solicitud de Desembolso y Pago a Favor de Roberto Palou Bosch y Amarilys de Jesús González* que presentaron los peticionarios.

Por los fundamentos que expondremos a continuación, expedimos el *certiorari* y **confirmamos** el dictamen recurrido.

I.

El 30 de mayo de 2017, los peticionarios presentaron una *Demanda* sobre disolución de comunidad de bienes contra el Sr. Jorge Morales Cruz (señor Morales Cruz), la Sra. Julia Navarro (señora Navarro) y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, los recurridos).[1] En esta, alegaron ser titulares de un cincuenta por ciento (50%) de participación en una comunidad de bienes constituida sobre una finca sita en el Municipio Guaynabo. Sostuvieron que, los recurridos eran dueños del otro cincuenta por ciento (50%) de la propiedad antes mencionada. Asimismo, indicaron que, en dicha propiedad se estableció el negocio conocido como *Macelo La Muda.* Expresaron que, el objetivo principal de su reclamo era dividir la comunidad de bienes debido a que resultaron infructuosos sus intentos de disolverla extrajudicialmente.[2] Por lo cual solicitó la venta de los bienes muebles e inmuebles que conformaban el establecimiento *Macelo La Muda.* Además, solicitaron el pago de los gastos legales por la cantidad de $50,000.00.

En respuesta, el 5 de septiembre de 2017, los recurridos presentaron su *Contestación a Demanda Enmendada.*[3] En síntesis, negaron que los peticionarios hubiesen realizado gestiones extrajudiciales para dividir la comunidad. Argumentaron que el hecho de que los peticionarios tomaron la decisión de dividir la

---

[1] *Véase*, Entrada Núm. 1 del apéndice del recurso, SUMAC TA. Cabe precisar que, el señor Morales Cruz falleció el 31 de mayo de 2017, por lo que la *Demanda* fue enmendada a los únicos efectos de incluir como parte a la Sucesión Jorge Morales Cruz. Posteriormente, el 1 de septiembre de 2021 la señora Navarro falleció, por lo que sus herederos la sustituyeron como parte en el pleito.

[2] Cabe señalar que, el 11 de diciembre de 2018, el TPI emitió una "*Sentencia Parcial y Orden.*" Mediante esta, acogió lo resuelto por un panel hermano en el caso de alfanumérico **KLCE201800978**. **En este se dictaminó que como cuestión de derecho procedía la división de la comunidad de bienes en controversia. A esos efectos, en su "*Sentencia Parcial y Orden*" el TPI resolvió que las partes debían establecer acuerdos sobre la forma en que se dividiría la comunidad de bienes. Cónsono a lo anterior, le requirió a las partes la presentación de las tasaciones, avalúos e inventarios correspondientes.**

[3] *Véase*, Entrada Núm. 6 del apéndice del recurso, SUMAC TA.

comunidad de bienes no implicaba necesariamente que la finca debía ser enajenada a un tercero. En cuanto a ello, señalaron que tenían un derecho de adquisición preferente sobre la participación de los peticionarios en caso de que estos decidieran enajenarla.

Por otra parte, los recurridos instaron una *Reconvención*.[4] En esta señalaron que los peticionarios actuaron de mala fe debido a que, según alegan, el objetivo del reclamo era trastocar su derecho propietario y destruir el destino agrícola de la propiedad común. A raíz de lo cual, solicitaron una compensación en daños y perjuicios por la cantidad de $100,000.00. Además, solicitaron un reembolso por una cantidad no menos de $6,000.00, por concepto de los gastos incurridos por la conservación y mantenimiento de la propiedad común.

Así las cosas, el 11 de enero de 2018, los peticionarios presentaron una *Contestación a la Reconvención y Segunda Demanda Enmendada*.[5] En dicho escrito, negaron que los recurridos tuvieran derecho a una indemnización por daños o a una partida por el reembolso de gastos de mantenimiento y conservación. Argumentaron que los recurridos percibieron las ganancias del negocio establecido en la finca sin repartir los ingresos correspondientes, acciones que los privaron del goce pacífico del inmueble.

En cuanto a la *Segunda Demanda Enmendada*, indicaron que los recurridos operaban unilateralmente y sin autorización el negocio *Macelo La Muda*. Alegaron que dicha operación carecía de una póliza vigente de la Corporación del Fondo del Seguro del Estado (CFSE), así como la omisión del pago de seguro social, desempleo e impuestos del "Fondo de Mejoramiento de la Carne de Res". Añadieron que, los recurridos tampoco habían radicado las planillas

---

[4] Íd.
[5] *Véase*, Entrada Núm. 7 del apéndice del recurso, SUMAC TA.

estatales y federales correspondientes. Sostuvieron que, por formar parte de esta comunidad, los actos de los recurridos le causaron daños valorados en $200,000.00. Asimismo, solicitaron una compensación adicional ascendente a $150,000 por los perjuicios derivados de la negativa de los recurridos a dividir la comunidad de bienes.

Tras varios incidentes procesales, el 2 de diciembre de 2021, los peticionarios presentaron una *Tercera Demanda Enmendada.*[6] Mediante esta, alegaron haber sufrido una serie de daños económicos y emocionales. Fundamentaron su petitorio en el uso y explotación comercial exclusivos que los recurridos ejercían sobre la finca común sin su consentimiento, lo cual les privó de los beneficios económicos de esta. Además, alegaron que estos les obstaculizaron la libre disposición y venta del inmueble.

Asimismo, solicitaron que se ordenara a los recurridos el pago retroactivo de un canon de arrendamiento mensual por el uso exclusivo de la propiedad, al amparo de la doctrina establecida en *Molina González v. Álvarez Gerena*, 203 DPR 442 (2019). Adujeron que, dicha renta debía computarse desde el 30 de mayo de 2017, fecha en que se solicitó formalmente la división de la comunidad de bienes mediante la presentación de la demanda. Estimaron la cuantía reclamada por este concepto en una suma no menor de $516,666.50, más el cómputo de los intereses por mora correspondientes.

Por su parte, el 24 de junio de 2022, los recurridos presentaron su *Contestación a Tercer Demanda Enmendada.*[7] En síntesis, negaron las alegaciones de los peticionarios en cuanto a la indemnización por daños. Alegaron que no procedía tal reclamo debido a que estos abandonaron la propiedad e incumplieron con

---

[6] *Véase*, Entrada Núm. 11 del apéndice del recurso, SUMAC TA.
[7] *Véase*, Entrada Núm. 12 del apéndice del recurso, SUMAC TA.

sus obligaciones como comuneros. Además, negaron haber obstruido la venta de la finca común; argumentaron que la oferta de compraventa existente fue retirada de manera voluntaria por el propio oferente. A su vez, reiteraron que los peticionarios estaban obligados a sufragar los gastos de conservación y mantenimiento correspondientes a su cuota comunera. Añadieron que, como copropietaria, les asistía el derecho de disfrutar de su participación particular y, por tanto, realizar la operación comercial que ejecutaba en el inmueble.

Posteriormente, el **1 de febrero de 2023**, la parte peticionaria radicó una *"Solicitud de Sentencia Sumaria Parcial"*.[8] Mediante esta, solicitó únicamente que se declarara su derecho a percibir el pago de una renta por el uso exclusivo de la finca por parte de los recurridos, exponiendo textualmente lo siguiente:

> "La causa de acción y reclamación respecto a la cual se solicita sentencia sumaria parcial se circunscribe a si los demandantes tienen derecho a que los demandados les compensen por el uso y disfrute exclusivo de su 50% de participación en común *pro indiviso* en la propiedad desde el 6 de abril de 2017."

Señaló que, el cómputo de la renta debía retrotraerse al **6 de abril de 2017**, fecha en que promovió una acción de desahucio en precario y falta de pago contra uno de los miembros de las sucesiones del señor Morales Cruz y la señora Navarro. Indicó que, aun quedaba en controversia, el valor de la propiedad y sus anexos, la enajenación de esta y la cantidad de renta mensual adeudada por los recurridos. En cuanto a esto último señaló que era necesaria una vista evidenciaria, para dirimir la cuantía.

El **17 de abril de 2023**, los recurridos presentaron su *Oposición a Solicitud de Sentencia Sumaria*.[9] En esta, sostuvieron que no existía controversia en cuanto a la existencia de la comunidad de bienes, y que a cada parte le correspondía un

---

[8] *Véase*, Entrada Núm. 14 del apéndice del recurso, SUMAC TA.
[9] Íd.

cincuenta por ciento (50%). Añadió que era un hecho incontrovertido el uso agrícola de la propiedad, lo cual era conforme al destino de esta. Además, argumentó que la parte peticionaria jamás requirió el disfrute del bien ni sufrió una negativa de acceso.

En cuanto al pago de la renta, sostuvieron que, de proceder algún canon, este tendría que calcularse desde la notificación de la *"Tercera demanda enmendada"*, por ser el momento en que propiamente se reclamó. No obstante, adujo que, el pago no procedía pues los peticionarios no demostraron un acto obstativo previo, no acreditaron el valor del arrendamiento y adeudaban aún los gastos de conservación y mantenimiento de la propiedad común.

Así las cosas, el **15 de febrero de 2024**, el TPI notificó su dictamen, en el que No ha lugar la solicitud de sumaria parcial.[10] Inconforme, el 16 de febrero de 2024, la parte peticionaria presentó una *Moción de Reconsideración*. El 7 de mayo de 2024, el TPI, notificó una *Resolución* en la que declaró *No Ha Lugar* la referida moción.

Aun inconforme, el 14 de mayo de 2024, la parte peticionaria instó un recurso de *certiorari* de alfanumérico KLCE202400525. Atendido el recurso un panel hermano determinó lo siguiente:

> … se dicta Sentencia Sumaria Parcial a los fines de declarar que la parte recurrida le debe pagar una renta a la parte peticionaria en concepto del uso exclusivo que ha estado ejerciendo sobre el bien común. Esto, a partir de la fecha en que se instó la presente reclamación. Entiéndase, el día 30 de mayo de 2017. El resto de las controversias, tales como la cuantía razonable a satisfacer en concepto de renta, la procedencia de pagos en concepto de conservación y mantenimiento, y la procedencia de los daños reclamados, quedan pendientes de adjudicación por el tribunal recurrido.

A la par con estos procedimientos, el 7 de mayo de 2024, el TPI notificó una *Resolución* mediante la cual, autorizó la venta del bien común a la Cooperativa de Porcicultores de Puerto Rico

---

[10] Íd.

(COOPORCI-PR).[11] En desacuerdo con este dictamen, los recurridos presentaron una solicitud de reconsideración, la cual fue denegada. Aun en desacuerdo, el 8 de julio de 2024, los recurridos presentaron el recurso de *certiorari* con alfanumérico KLCE202400749. Mediante este un panel hermano confirmó el dictamen del TPI, por consiguiente, procedía la venta del bien común a COOPORCI-PR.

Continuados los procedimientos ante el TPI, el 22 de abril de 2025, el TPI emitió una *Resolución,* en la cual plasmó los acuerdos alcanzados por las partes en la vista evidenciaria celebrada el 9 de abril de 2025.[12] De esta se desprende que las partes pactaron lo siguiente:

i. La renta mensual que se le pagará a los demandantes por su participación será la suma de $8,100.00 mensuales, la cual será retroactiva al 30 de mayo de 2017; y dicho pago mensual será hasta que se venda la propiedad.

ii. Los pagos mensuales se realizarán todos los días primero de cada mes, comenzando en mayo de 2025, y la parte demandada tendrá cinco días de gracia para cumplir con el pago.

iii. **Las partes se pondrán de acuerdo para ver de qué manera realizarán el plan de pago de la cantidad retroactiva al 30 de mayo de 2017**, probablemente utilizarán la vía electrónica para los pagos mensuales.

iv. En caso de incumplimiento del pago, la parte demandante procederá a la solicitud del desahucio de la propiedad.

v. **Las partes redactarán una estipulación donde tendrán los acuerdos vertidos y la manera en que se hará el pago de las cantidades retroactivas.**

Añadió que posteriormente las partes presentarían una moción conjunta con el acuerdo, la cual incluiría todos los términos y condiciones de este.

Posteriormente, el 12 de mayo de 2025, los recurridos presentaron un *Escrito de Réplica.*[13] En este argumentaron que, a pesar de existir un acuerdo en cuanto a la suma adeudada por

---

[11] *Véase,* Entrada Núm. 15 del apéndice del recurso, SUMAC TA.
[12] *Véase,* Entrada Núm. 17 del apéndice del recurso, SUMAC TA.
[13] *Véase,* Entrada Núm. 18 del apéndice del recurso, SUMAC TA.

concepto de arrendamiento, aún no se había determinado a cuánto ascendía el pago real y efectivo. Expresaron que, todavía era necesario precisar la suma que los peticionarios adeudaban por los gastos de conservación y mantenimiento, además de otras obligaciones financieras por las que debían responder.

Así las cosas, los peticionarios presentaron varios escritos en los cuales solicitaron se dictara *Sentencia Parcial* para que se reconocieran los acuerdos adoptados en el acuerdo transaccional. Así como también solicitud de *Sentencia Parcial por Estipulación* y solicitudes de Embargo Preventivo.[14]

El 5 de septiembre de 2025, el TPI emitió una *Resolución*.[15] Mediante esta declaró No Ha Lugar a la solicitud de sentencia parcial, sin embargo, declaró Ha Lugar la solicitud de embargo preventivo. En específico señaló lo siguiente:

> La Resolución de 9 de abril de 2025 es final y firme e incorpora el acuerdo entre las partes y establece que la cantidad de pago en renta mensual es de $8,100 y que dicha cantidad debe ser retroactiva al 30 de mayo de 2017. Un simple cálculo matemático de los meses adeudados (95) por la cantidad mensual de renta ($8,100) establece la cantidad adeudada por renta retroactiva al 30 de mayo de 2017 a $769,500.

Ahora bien, respecto al cómputo de la renta por el uso exclusivo de la propiedad indivisa por parte de un comunero, indicó que este era un asunto interlocutorio que no disponía de la causa de acción para la liquidación de la comunidad ni de las reclamaciones por daños y perjuicios. Por otra parte, señaló que, aun cuando las partes habían acordado que presentarían una moción conjunta en la que se plasmaran los acuerdos, la misma no se había presentado.

Tras múltiples incidentes procesales, el bien en controversia fue vendido a COOPORCI-PR y el producto de la venta fue

---

[14] *Véase*, Entradas Núm. 19, 20, 21 y 22, del apéndice del recurso, SUMAC TA.
[15] *Véase*, Entrada Núm. 23, del apéndice del recurso, SUMAC TA.

consignado en el TPI.[16] Así las cosas, el 11 de marzo de 2026, el TPI ordenó a la Unidad de Cuentas, Secretaría o Alguaciles, expedir un cheque por la suma de $442,121.42 a favor del Fondo para el Fomento de la Industria de la Carne de Res (FFICR).[17]

Así las cosas, el 24 de marzo de 2026, los peticionarios presentaron una *Solicitud de Desembolso y Pago a Favor de Roberto Palou Bosch y Amarilys De Jesús González*, por concepto de la renta adeudada.[18] Ese mismo día, presentaron otra solicitud de desembolso y pago, a favor del United States Internal Revenue Service (IRS) por la suma de $151,014.25, por concepto de contribuciones federales de empleo y desempleo (*federal employment and unemployment taxes*) adeudadas por los recurridos, en la operación de *Macelo La Muda*.[19]

Evaluadas las solicitudes, el 6 de abril de 2026, el TPI emitió una *Orden* en la cual determinó que las solicitudes de desembolso serían atendidas una vez se discutiera y aprobara el cuaderno particional.[20] Cabe resaltar que, los peticionarios admitieron en su escrito que el TPI no señaló un término para que las partes presentaran el cuaderno particional.

En atención a ello, el 21 de abril de 2026, los peticionarios presentaron una moción mediante la cual sometieron el cuaderno particional propuesto para el pago de las sumas vencidas, líquidas y exigibles.[21] Luego, el 27 de abril de 2026, el TPI emitió una *Orden,* notificada el 28 de abril de 2026, en la que determinó que las solicitudes de desembolso serían atendidas una vez se discutiera y

---

[16] *Véanse*, Entradas Núm. 34 y 35, del apéndice del recurso, SUMAC TA.
[17] *Véase*, Entrada Núm. 44, del apéndice del recurso, SUMAC TA. Nota: Dicha orden fue reiterada en mediante otra *Orden* emitida el 27 de abril de 2026 y notificada al siguiente día.
[18] *Véase,* Entrada Núm. 45, del apéndice del recurso, SUMAC TA.
[19] *Véase*, Entrada Núm. 46, del apéndice del recurso, SUMAC TA.
[20] *Véase*, Entrada Núm. 48, del apéndice del recurso, SUMAC TA.
[21] *Véase,* Entrada Núm. 49, del apéndice del recurso, SUMAC TA. Cabe precisar que, dicha moción corresponde exclusivamente al cuaderno particional propuesto por los peticionarios. Los recurridos aún no han presentado su cuaderno particional.

aprobara el Cuaderno Particional.[22] En desacuerdo, el 28 de mayo de 2026, los peticionarios presentaron el recurso de epígrafe y formularon el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al negar el pago y desembolso las sumas de $777,600 y $16,200, más intereses, adeudadas por los recurridos a los peticionarios por concepto de cánones de renta adeudados por el uso exclusivo de la propiedad de la comunidad según la Sentencia del Tribunal de Apelaciones, el Acuerdo Transaccional y el Embargo trabado.**

Atendido el recurso, el 1 de junio de 2026, emitimos una *Resolución* concediéndole a los recurridos hasta el 8 de junio de 2026 para presentar su postura en cuanto al recurso. Oportunamente, los recurridos presentaron su *Escrito de Oposición a Petición de Certiorari* y negaron que el TPI cometiera el error imputado. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. *Veamos.*

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción

---

[22] *Véase,* Entrada Núm. 54, del apéndice del recurso, SUMAC TA.

total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la *certiorari* de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, pág. 63, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

**-B-**

Se ha definido mandato como la "[o]rden de un tribunal superior a uno de inferior jerarquía, notificándole haber revisado el caso en apelación y enviándole los términos de su sentencia". *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 300–301 (2012), citando a I. Rivera García, *Diccionario de términos jurídicos*, 2da ed. rev., New Hampshire, Ed. Equity Publishing Corporation, 1989, pág. 162. Una vez el mandato se remite al tribunal inferior, este adquiere jurisdicción solamente para ejecutar la sentencia como fue emitida en apelación. *Mejías et al. v. Carrasquillo et al.*, supra*,* pág. 301.

Según esa regla, los foros inferiores no tienen discreción para ignorar ni alterar un mandato. Sin embargo, estos "mantienen discreción para reconsiderar asuntos que no fueron expresa o implícitamente decididos por el tribunal que emitió el mandato". Íd.*,* pág. 302. Nuestro Tribunal Supremo ha sido específico en cuanto a los asuntos sobre los cuales los foros

inferiores pueden reconsiderar, aun cuando existe un mandato judicial:

> *Lo anterior no debe interpretarse como un cheque en blanco para que los tribunales inferiores actúen fuera de la orden dictada. Por ello, se debe entender que son solo aquellos asuntos que son ajenos al mandato judicial los que el foro inferior podrá revisar, a saber, aquellos asuntos que no surgen de manera explícita o implícita. En cuanto a los asuntos explícitos, se entenderá que son los que surgen de la sentencia claramente y sin espacio a ambivalencias. Sin embargo, los asuntos implícitos son los que establece el caso* Pan American v. Tribunal Superior, *supra, es decir, aquellas cuestiones que, si bien no se litigaron, pudieron haberse litigado, aquellas que bien surgen del mandato mismo, así como aquellas que se deben realizar para que resulte efecto el mandato.* Íd.*, pág. 303.*

Por lo que, un foro inferior no puede entrar a revisar un mandato judicial dictado por un foro de mayor jerarquía a menos que sea claramente un asunto que no quedó incluido con el mandato judicial.

Ahora bien, en lo pertinente a la controversia ante nos, recientemente en *Jorge Rivera Camacho v. Publi-Inversiones de Puerto Rico,* 2026 TSPR 54, 218 DPR ___ (2026) citando a *In re Sanford Fork & Tool,* 160 U.S. 247, 255 (1895), nuestro Tribunal Supremo reiteró que en el aspecto sustantivo "la doctrina del mandato impide que un foro adjudicativo de jerarquía inferior **maneje el caso de forma contraria a lo decidido por un tribunal de jerarquía superior**". (Énfasis nuestro).

### III.

En su único señalamiento de error, los peticionarios argumentaron que el TPI incidió al negar el pago y desembolso de las sumas de $777,600 y $16,200, más intereses, acumuladas por concepto de rentas adeudadas por el uso exclusivo de una propiedad de la comunidad. Ello, en contravención a una sentencia que emitió un panel hermano. No les asiste la razón. *Veamos.*

Según discutimos en la exposición del derecho, un foro de instancia no puede manejar el caso ante su consideración de

manera contraria a lo dictaminado por un tribunal de jerarquía superior. En el caso de autos, un panel hermano dictó una *Sentencia Parcial* en el caso alfanumérico KLCE202400525, en la que declaró que los aquí recurridos debían pagar una renta por el uso exclusivo que habían estado ejerciendo sobre el bien propiedad de la comunidad. Ello, con carácter retroactivo a partir del 30 de mayo de 2017, fecha en que se instó la reclamación. Respecto a la cuantía por concepto de renta, la procedencia de los pagos por mantenimiento y conservación de los bienes y otras controversias, el panel determinó que quedaban pendientes de adjudicación por el tribunal recurrido. En consecuencia, **este dictamen se limitó a concluir que los peticionarios tenían derecho a que se les pagara una renta por el uso exclusivo de la propiedad y que le correspondía al TPI determinar dicha cuantía.**

Una vez el caso fue devuelto al TPI, este ordenó la celebración de una vista evidenciaria en la que se determinaría el cómputo de la renta por el uso exclusivo de la propiedad común. Dicho bien era objeto de la controversia y se encontraba sujeto a liquidación. Durante esta vista, las partes llegaron a un acuerdo en el que se determinó que la renta mensual pagadera a los peticionarios, por su participación, sería de $8,100.00. Asimismo, pactaron que definirían un plan de pago. Tales acuerdos serían presentados en una moción conjunta que incluiría todos los acuerdos y condiciones. No obstante, según consta en la *Resolución* que emitió el TPI el 5 de septiembre de 2025, las partes no presentaron la referida moción conjunta.

Cabe señalar que, la propiedad común fue vendida a COOPORCI-PR y que el producto de dicha venta fue consignado en el TPI. Sobre este dinero consignado, pesa una orden preventiva de embargo, sobre el cincuenta por ciento (50%), para asegurar la sentencia.

Así las cosas, el TPI concluyó en la referida *Resolución,* que, a base de lo acordado en sala, la renta adeudada por los recurridos ascendía a $769,500.00. Además, determinó que quedaba pendiente resolver la liquidación de la comunidad, así como las reclamaciones de daños y perjuicios, entre otras. Por lo tanto, el TPI cumplió con lo ordenado por el panel hermano al determinar la cuantía a pagar por concepto de renta por el uso exclusivo de la propiedad común.

Los peticionarios solicitaron al foro a *quo* el desembolso y pago a su favor de las rentas adeudadas. A tal petición, el TPI determinó que no se efectuaría el desembolso en ese momento. Concluyó que el desembolso a las partes sería atendido una vez se discutiera y aprobara el Cuaderno Particional. Por lo cual, el TPI no se ha negado al pago de las rentas adeudadas, sino que determinó que sería efectuado posteriormente. Recordemos que la controversia que dio origen al caso ante nos, es la liquidación de una comunidad de bienes, por lo cual es necesario atender el cuaderno particional y atender la liquidación antes de disponer de los fondos provenientes de esta.

Por lo anterior, resulta forzoso concluir que el TPI actuó correctamente y realizó la determinación acorde al dictamen que emitió el panel hermano.

IV.

Por los fundamentos antes expuestos, expedimos el recurso de *certiorari* solicitado y **confirmamos** el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones